## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICOLE SPECTOR,<br><br>       *Plaintiff,*<br><br>v.<br><br>THE DISTRICT OF COLUMBIA,<br><br>       *Defendant.* | Case No. 1:17-cv-001884 (EGS) |

## <u>DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant District of Columbia (the District) moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, a former employee of the District's Department on Disability Services (DDS), claims the District violated the Americans with Disability Act (ADA), Rehabilitation Act, and Title VII when it improperly denied her telework request. She also claims the District interfered with her rights under the Family Medical Leave Act (FMLA) when it denied her claim for FMLA leave. Plaintiff further claims that the District retaliated against her violating the ADA, Rehabilitation Act, Title VII, and FMLA.

The District is entitled to judgment because there is no direct evidence of disability, gender, or FMLA discrimination or retaliation. In support of this motion, the District's memorandum of points and authorities, statement of undisputed material facts, and proposed order are attached.

DATED: October 22, 2018             Respectfully Submitted,

                                        KARL A. RACINE
                                        Attorney General for the District of Columbia

                                        GEORGE C. VALENTINE

Deputy Attorney General
Civil Litigation Division

/s/ Sarah L. Knapp
SARAH L. KNAPP [470008]
Chief, Civil Litigation Division Section III

/s/ Taylor Morosco
TAYLOR MOROSCO [316401][1]
Assistant Attorney General
Civil Litigation Division, Section III
441 Fourth Street, N.W.
Washington, D.C. 20001
Phone: 202-442-9867
Fax: 202-741-0499
Taylor.morosco@dc.gov

*Counsel for Defendant*

---

[1]     Admitted to practice only in California. Appearing before this Court pursuant to LCvR 83.2(f) under the direct supervision of Sarah L. Knapp, a member of the District of Columbia Bar.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLE SPECTOR,<br><br>　　　　　　*Plaintiff,*<br><br>　　v.<br><br>THE DISTRICT OF COLUMBIA,<br><br>　　　　　　*Defendant.* | Case No. 1:17-cv-001884 (EGS) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff claims the District violated the Americans with Disability Act (ADA),

Rehabilitation Act, and Title VII when it improperly denied her telework request.  She also

claims the District interfered with her rights under the Family Medical Leave Act (FMLA) when

it denied her claim for FMLA leave.  For the reasons discussed below, no reasonable jury could

find for Plaintiff on any of these claims and the Court should grant judgment to the District under

Fed. R. Civ. Pro. 56.

**FACTUAL BACKGROUND**

This case arises from Plaintiff's former employment at the District of Columbia

Department of Disability Services (DDS).  DDS's primary duty is to provide services to the

District's disabled citizens.  DDS also serves as the District's agency for Social Security

Disability Insurance determinations under the direction of the Federal Social Security

Administration (SSA).  *Disability Determination Process*, Social Security Administration,

https://www.ssa.gov/disability/determination.htm (last visited Oct. 12, 2018).  This unit is called

the Department on Disability Determination (DDD) and is funded by the federal government. *See id.*

Plaintiff Nicole Spector (previously Nicole Appleman) was a Medical Liaison Officer for DDD. Ex. 1, Pl.'s Dep. 25:7–8; 28:9–12. She worked under then-acting DDD Director Darryl Evans. *Id.* at 41:10–16, 42:6–8. As part of her duties, she worked with medical providers to determine compliance with DDD standards, oversaw the training and recruitment of providers, removed providers who failed to meet performance standards, and served as the liaison for DDD to the medical community. *Id.* at 25:8–22, 26:1–22, 27:1–22. Ex. 2, Grade 12 Position Description. Plaintiff, like many DDS employees, worked alternative work schedule (AWS) hours from 7:00 a.m. until 4:30 p.m. and had every other Friday off. *Id.*

Request for an Accommodation

According to Plaintiff she had had myasthenia gravis, which caused fatigue, muscle, and eye weakness, and double vision. Ex. 1, Pl.'s Dep. 57:1–12; 105:14–22. In early 2016 Plaintiff asked that she be allowed to telework (*i.e.*, work from home) as an accommodation for this disability. *Id.*

Although DDS allowed its employees to telework, to perform her duties, Plaintiff needed to use SSA's network.[2] Ex. 3, Evans Dep. 102:3–22. SSA did not allow DDD employees to access the SSA network and or use its equipment from any location other than their designated worksites. *See id.* at 95:1–96:19 (testifying that, in 2016, when the District was urging all agencies to institute telework because of a Metro issue, DDD was the only division of DDS that

---

[2]     DDD employees also use both state and federal computer networks. Their e-mail system is part of the DDD network, while the SSA network encompasses their files and materials. *See* Ex. 3, Evans Dep. 32:4–22, 101:1–102:22.

had not instituted a telework policy). [3]  DDS was also concerned because Plaintiff's job required

her to work outside the office.  Ex. 4, Interactive Process Communications, 1, 4.

So DDS denied Plaintiff's request and over the next several months the parties

communicated about what accommodation, if any, DDS could provide to Plaintiff.  Ex. 4,

Interactive Process Communications.  While this process was ongoing, Plaintiff stopped coming

to work from May 13 till October 14 because she was not allowed to telework.  *Id.* at 10; Ex. 1,

Pl.'s Dep. 360:10–12.  For part of this period, Plaintiff was covered by short-term disability

insurance.

Specifically, the evidence reflects the following communications between Plaintiff, her

counsel and DDD:

-   On March 7, 2016, Plaintiff asked to telework as an accommodation for her alleged

    disability.  Ex. 5, Reasonable Accommodation Request.  She claimed it was difficult for

    her to commute, get ready for work, and stare at a computer screen for long periods of

    time.  Ex. 1, Pl.'s Dep. 46:4–49:21.  Plaintiff wanted to telework every day.  Ex. 4,

    Interactive Process Communications, 50.

-   On March 9, DDS denied Plaintiff's request to telework.  Ex. 4, Interactive Process

    Communications, 1.

-   After DDS denied Plaintiff's request to telework every day, she requested an "open-ended"

    telework schedule where she alone would make the determination whether she would

---

[3]      Although SSA was piloting a program to allow its employees to telework, the program
was not extended to DDD employees.  Ex. 3, Evans Dep. 36:19–38:12.  In response to Plaintiff's
request, Evans asked SSA to make an exception for Plaintiff to access the SSA network from
home.  *Id.* at 36:12–21, 96:22–97:18.  Evans's request triggered SSA to reconsider its policy.
*See id.*

telework at the beginning of each workday.  Ex. 3, Evans Dep. 100:5–22; Ex. 6, Hernandez Dep. 127:1–128:16.[4]

- On March 14, Plaintiff's attorney sent DDS a letter asking DDS to reconsider Plaintiff's telework request.  Ex. 4, Interactive Process Communications, 2–3.

- On March 31, DDS informed counsel that they could not allow Plaintiff to telework every day or at her discretion but that it would consider other accommodations.  *Id.* at 4, 10–11.

- On April 5, rather than propose an alternative accommodation, Plaintiff's counsel responded that teleworking is a reasonable accommodation under EEOC guidance and Plaintiff "remains ready, willing and able to engage in that 'interactive process.'" *Id.* at 12–13.

- On March 23, DDS requested a meeting with Plaintiff.  *Id.* at 5–9.

- From March 23 until March 28, DDS and Plaintiff e-mailed several times to find a meeting date that worked for all parties.  *Id.* at 5–9.

- On April 11, Plaintiff and her attorney met with Evans, DDS Assistant General Counsel Kasia Preneta, Human Capital Administrator Gria Hernandez, and union representative Darnise Bush.  *See id.* at 9, 21–22.  At the meeting, Plaintiff requested to telework at her convenience, but no more than two to three days a week.  *See id.* at 21–22; Ex. 1, Pl.'s Dep. 199:11–15.  She also requested "the ability to end her tour of duty early should she experience physical discomfort while in the office." [5]  *See id.*  DDS offered Plaintiff the option to use Metro Access Paratransit, a DDS-funded service where a van would transport

---

[5]     Plaintiff disputes that she requested the ability to end her tour of duty early at this meeting. Ex. 1, Pl.'s Dep. 199:16–18. But there is no dispute that DDS made the offer when it sent a letter describing the meeting and that Plaintiff did not accept it called her attorney but admits that neither of them followed up on this alleged inaccuracy. *Id.* at 203:10–22.

Plaintiff to and from work.  Ex. 4, Interactive Process Communications, 21–22; Ex. 1, Pl.'s

Dep. 201:1–10.  DDS also offered Plaintiff the ability to decrease her daily hours by one

hour and telecommute one day per pay period (every two weeks) because it was reasonable

for Plaintiff to occasionally telework without access to the SSA network.[6]  Ex. 4,

Interactive Process Communications, 21–22.  Plaintiff rejected both offers.  *Id.*

- On April 13, Evans, Hernandez, Deputy Director for Administration Deborah Bonsack,

  Human Resources (HR) representative Rachel Phillips, and DDS General Counsel Mark

  Back had another meeting with Plaintiff to discuss her request to telework.  Ex. 1, Pl.'s Dep.

  213:2–17; Ex. 4, Interactive Process Communications, 14, 16.  At this meeting, Plaintiff

  claimed that her job description was inaccurate and that she was not performing all of the

  duties outlined in the Medical Liaison Officer position description.  Ex. 1, Pl.'s Dep. 213:2–

  215:22; Ex. 4, Interactive Process Communications, 16, 18–20.  DDS stated that it would

  review Plaintiff's position description.  *Id.* at 16; Ex. 1, Pl.'s Dep. 216:1–7.

- On June 7, DDS reiterated its last offer of one day of telework per pay period.  Ex. 4,

  Interactive Process Communications, 21–22.

- On June 17, Plaintiff's new attorney sent a letter of introduction to DDS and claimed that

  DDS had not properly engaged in the interactive process.  *Id.* at 23–27.

- On June 26, DDS repeated its "outstanding offer to permit [Plaintiff] to telework one day

  per pay period." *Id.* at 28–29.

---

[6]     Plaintiff disputes that DDS offered her one day of telework per pay period. She claims
that when DDS sent her a letter reiterating this offer, she called her attorney but admits that
neither of them followed up on this alleged inaccuracy.  Ex. 1, Pl.'s Dep. 203:10–22.

- Approximately two weeks later, Plaintiff's attorney verbally proposed two scheduled days of telework per week. *Id.* at 30–32 (referenced in letter).

- In the summer of 2016, SSA changed its policy and permitted DDD employees to telework. *See id.* at 33.

- On July 22, DDS notified Plaintiff's attorney of SSA's change in policy. *Id.* DDS offered to speak with Plaintiff about the change in policy. *Id.*

- On September 6, after SSA finalized its new policy, DDS offered Plaintiff the ability to telework one day every week. *See id.* at 38.

- On September 7, Plaintiff rejected DDS's offer and demanded two days of telework every week. *Id.* at 36–37.

- On September 9, DDS agreed to allow Plaintiff to telework two days every week on a regular (not AWS) work schedule. *Id.* at 36.

- On September 12, Plaintiff's attorney accepted DDS's offer for two days of telework on a regular work schedule, but added the settlement demand of $45,261.30. *Id.* at 34–35.[7] This was the first time Plaintiff made a monetary demand. *See id.* at 48.

- From September 16 until September 28, the parties negotiated a possible settlement. *Id.* at 42–49.

- On September 26, Plaintiff's attorney asked DDS if Plaintiff could return to work before the parties reached a settlement. *Id.* at 43.

---

[7]     Plaintiff demanded $45,261.30 as compensation for issues relating to FMLA leave. *Id.* But negotiations about fees slowed down the interactive process.

- On September 30, DDS responded that DDS "has no opposition to having [Plaintiff] return to work.  It has been [Plaintiff's] choice not to return to work, therefore, it remains her choice should we not reach an agreement."  *Id.* at 50–51.

- On October 3, DDS asked Plaintiff to contact Evans "as soon as possible" to start her two suitability determinations (state and federal) to be cleared for an SSA laptop.  Ex. 7, Laptop Communications 1–2.  To receive an SSA laptop, every employee must submit to District and Federal procedures (*i.e.*, background check, photo, and fingerprinting).  *Id*. at 1; Ex. 3, Evans Dep. 40:5–41:22, 98:1–100:4.

- On October 4, Plaintiff contacted Evans about the suitability determinations.  *Id.*

- On October 4, Evans responded, explained the procedure, and stated that it would take at least a couple weeks.  *Id.*  Evans asked Plaintiff to come in the next day to start the process. *Id.*

- On October 17, Plaintiff returned to work.  *See* Ex. 8, Return to Work; Ex. 1, Pl.'s Dep. 360:10–12.

- On October 18, Plaintiff teleworked for the first time.  *See id.*; Ex. 9, First Day of Telework; Ex. 1, Pl.'s Dep. 360:10–361:7.

Plaintiff also claims DDS discriminated against her because of her gender when it denied her telework request.  She claims that Robert Cofino and Darryl Evans were male comparators who could telework when she was unable to do so.  Ex. 1, Pl.'s Dep. 119:15–20.  Neither Cofino nor Evans, however, were similarly situated to Plaintiff nor able to telework.  Cofino, an Information Technology (IT) Specialist, had a different position and job duties than Plaintiff. Ex. 3, Evans Dep. 78:2–14.  Cofino was responsible for IT for the entire division.  *Id.* Significantly, Cofino had access to the DDD network but not the SSA.  *Id.* at 78:2–14, 101:8–22.

Evans was Plaintiff's supervisor and Acting Director of DDD. *Id.* at 13:12–13, 9:15–22.  He also did not have access to the SSA network. *Id.* at 101:1–22.

Reclassification of Plaintiff's Position and Other Purported Retaliation

On March 24, Plaintiff filed a charge of discrimination with EEOC for sex and disability discrimination. Ex. 10, Charge of Discrimination.  She amended that charge on November 17, to include allegations of retaliation. *Id.*  Plaintiff claims that after she requested to telework and filed a charge of, DDS retaliated against her by reclassifying her position, rating her 3.48 on her annual performance review, and intentionally delaying the issuance of her SSA laptop. *Id.* at 10.  She also claims DDS subjected her to a retaliatory hostile work environment by decreasing her job responsibilities.  According to Plaintiff, she heard Evans and Deputy Director for Administration Deborah Bonsack joke about the genuineness of Plaintiff's accommodation request.  Am. Compl. ¶ 34.

In April, Plaintiff provided DDS with a document detailing the purported inaccuracies in her position description. *Id.* at 14, 16, 18–20; Ex. 1, Pl.'s Dep. 312:9–313:6.  The document said that her position description included duties that she was not required to perform. *See id.*  DDS said it would consider her suggestions and review her position description. *Id.* at 16–17; Ex. 1, Pl.'s Dep. 312:9–313:6; Ex. 11, Declaration of Gria Hernandez.  Shortly thereafter, Plaintiff took leave and was away from the office until October 17. *See* Ex. 12, FMLA Communications; Ex. 8, Return to Work.

Barbara Thompson (HR) reviewed Plaintiff's position description.  Ex. 13, Declaration of Barbara Thompson.  She completed the review and reclassification on October 3. *Id.*  After reviewing her position description and removing the job duties Plaintiff claimed she did not perform, DDS reclassified the Medical Liaison Officer position. Ex, 13, Declaration of Barbara

Thompson.  Prior to the review, Plaintiff's position was a Grade 12.  *See id.*  Because Plaintiff

disputed the travel and liaison components of her job, Thompson removed these portions from

Plaintiff's position description, which resulted in a lower classification.  *See id.*  DDS renamed

the position to Medical Professional Relations Officer, altered the position description and smart

goals, and classified the position as a Grade 11.  *Id.*  Following the removal of the job

components from Plaintiff's position, Evans, and other DDD employees assumed those duties.

Ex. 3, Evans Dep. 106:12–107:14.  Evans, Hernandez, Bonsack, and Phillips met with Plaintiff

about the review after Plaintiff returned to work.  Ex. 13, Declaration of Barbara Thompson; Ex.

1, Pl.'s Dep. 316:16–21.  The DDS officials informed Plaintiff that she would receive her same

Grade 12 salary for two years.  *See id.*

FMLA

        Plaintiff applied for FMLA leave on May 13 and notified Evans two days later (Sunday)

that she would not be in the office on Monday.[8]  Ex. 12, FMLA Communications, 10.  She

completed the application for FMLA leave on June 2.  *Id.* at 11.  In her application, Plaintiff

wrote, "I am able to perform the essential functions of my job with reasonable accommodation,

but my employer is refusing to make one."  *Id.* at 3.  In response to "[i]s the employee unable to

perform any of his/her job functions due to the condition," Plaintiff's health care provider

---

[8]        The Amended Complaint claims Plaintiff also requested FMLA leave on July 14, *see*
Am. Compl. ¶ 112, but there is no evidence of any such application. When asked about her
FMLA leave in discovery and Plaintiff's deposition, she did not mention this request. Ex. 18,
Pl.'s Resp. to Interrog. No. 14; Ex. 1, Pl.'s Dep. 75:3–78:2.  Consequently, the District is not
addressing the alleged July 14 request here.

checked "no." *Id.* at 4.[9]  Because the application did not show that Plaintiff could not perform her job, DDS denied her application for FMLA leave. *Id.* at 22.

Plaintiff used sick leave from May 16 until June 1, 2016.  From June 2 through July 13, 2016 Plaintiff received short term disability coverage from a private insurer. Ex. 1, Pl.'s Dep. 277:14–278:6; 291:17–20.[10]  She returned to work on October 17. *See* Ex. 8, Return to Work. During the five months that Plaintiff stopped working, DDS never placed Plaintiff on AWOL (absent without official leave) status or asked her to return to work. *See* Ex. 4, Interactive Process Communications, 46.

Even so, Plaintiff claims DDS interfered with her FMLA rights when it denied her FMLA claim.  Am. Compl. at 12.  She claims this interference prejudiced her by causing her emotional distress. *Id.*  She also claims DDS retaliated against her after she requested FMLA leave by reclassifying her position and rating her an average of 3.48 on her performance review. *Id.* at 12–13.  Plaintiff resigned from DDS in or around September 2017.  Ex. 1, Pl.'s Dep. 28:13–17; 316:16–21; 319:11–22.

## PROCEDURAL HISTORY

Plaintiff filed a Charge of Discrimination on March 24, 2016 with the District of Columbia Office of Human Rights (OHR) and the Equal Employment Opportunity Commission (EEOC) alleging sex and disability discrimination.  Ex. 10, Charge of Discrimination.  She

---

[9]     Plaintiff also testified that she could perform all her job duties at the time of her FMLA application.  Ex. 1, Pl.'s Dep. 86:10–87:6.

[10]     DDS has a short-term disability insurance program through The Standard. *See id; Short-Term Disability Insurance Program,* Department on Disability Services, https://dds.dc.gov/page/short-term-disability-insurance-program (last visited Oct. 16, 2018).  The Standard requires FMLA coverage as well. *See id.*  The Standard accepted Plaintiff's FMLA application, and provided her with six weeks of coverage. *See id.*

amended that charge on November 17 to include a claim of retaliation for filing the charge of discrimination.  *Id.*  She received her right-to-sue letter on July 11, 2016 and filed this action on September 15, 2016.  *See* Am. Compl. ¶ 14.

Plaintiff eventually filed an Amended Complaint alleging six counts: (I) denial of reasonable accommodations in violation of the ADA and Rehabilitation Act; (II) sex discrimination in violation of Title VII; (III) adverse action retaliation in violation of the ADA, Rehabilitation act, and Title VII; (IV) retaliatory hostile work environment in violation of the Rehabilitation Act; (V) interference in violation of the FMLA; and (VI) retaliation in violation of the FMLA.  *See* Am. Compl.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  A fact is "material" if it can affect the substantive outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if sufficient evidence exists so that a reasonable jury could return a verdict for the non-moving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The moving party bears the initial responsibility of identifying the portions of the record which show the lack of any genuine issue of material fact.  *Id*. at 323; Fed. R. Civ. P. 56(c) (noting that the movant may cite "depositions, documents, electronically stored information, affidavits or declarations, . . . admissions,

13

interrogatory answers, or other materials").  In response, the non-moving party must similarly designate specific facts in the record that reveal a genuine issue that is suitable for trial.  *Celotex*, 477 U.S. at 324.

To defeat summary judgment, the non-moving party must "go beyond the pleadings and by his own affidavits, or by [the evidence in the record] designate specific facts showing that there is a genuine issue for trial."  *Id.* (quotation marks omitted).  The non-moving party's opposition "must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial."  *Musgrove v. District of Columbia*, 775 F. Supp. 2d 158, 164 (D.D.C. 2011) (Sullivan, J.) (citing Fed. R. Civ. P. 56(c)(1) and *Celotex*, 477 U.S. at 324).

## ARGUMENT

### I.  PLAINTIFF CANNOT PROVE THAT DDS FAILED TO ACCOMMODATE HER DISABILITY (COUNT I).

Plaintiff claims that the District failed to accommodate her disability for seven months. To prevail on a failure to accommodate claims, a plaintiff must show that (1) she had a disability; (2) her employer was aware of her disability; (3) with reasonable accommodation she could perform the essential functions of her job; and (4) her employer refused to accommodate her disability.  *See Floyd v. Lee*, 968 F. Supp. 2d 308, 326 (D.D.C. 2013) (ADA); *Graffius v. Shinseki*, 672 F. Supp. 2d 119, 125 (D.D.C. 2009) (citations omitted) (Rehabilitation Act).  To support her claim, Plaintiff points to the alleged failure of the District to participate in the "interactive process" and the amount of time it took for the parties to agree on an appropriate accommodation.

Am. Compl. ¶ 68 -73.  Plaintiff's claim fails on either theory for the following reasons.

First, "[t]here is no independent cause of action for failure to engage in the interactive process—under the ADA and in turn, the Rehabilitation Act, there is only a cause of action for failure to accommodate generally." *Matos v. DeVos*, 317 F. Supp. 3d 489, 497 (D.D.C. 2018) (quoting *Doak v. Johnson*, 19 F. Supp. 3d 259, 278 n.20 (D.D.C. 2014)).[11]  Here, the interactive process worked.  Plaintiff and DDS eventually reached a mutually agreeable accommodation. Thus, Plaintiff cannot show that she was denied an accommodation based on a failure of the interactive process.

Nor could a reasonable jury find that DDS unduly delayed in providing Plaintiff with this accommodation.  An unreasonable delay in response to a request for an accommodation can be actionable.  *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (internal quotation omitted); *see also, e.g.*, *Mayers v. Laborers' Health & Safety Fund of North Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007); *Leiterman v. Johnson*, 60 F. Supp. 3d 166, 181 (D.D.C. 2014) (holding that a two- to three-year delay in accommodation might be unreasonable).  To determine whether a delay is unreasonable, courts look at "the length of the delay, reasons for the delay, whether the employee was offered any alternative accommodations while evaluating a particular request, and

---

[11]     Courts consider evidence of a party's failure to engage in the interactive process only as proof of fault in a failure to accommodate claim.  *See Ward v. McDonald*, 762 F.3d 24, 33–35 (D.C. Cir. 2014) (holding that the interactive process broke down because of Plaintiff, and thus the employer was not liable for failure to accommodate).  Here, there is no evidence that DDS was responsible for any breakdown in the interactive process.  DDS, Plaintiff, and Plaintiff's counsel were in constant communication, trying to negotiate through e-mail, letters, meetings, and phone calls.  Ex. 4, Interactive Process Communications.  The parties discussed Plaintiff's work duties, her inability to perform her job from home, and DDS was consistently offering Plaintiff alternative accommodations.  DDS offered Plaintiff access to Metro Access Paratransit program, one day of telework per pay period, and then one day of telework per week.  *Id.* at 21–22.  DDS worked diligently and in good faith to offer Plaintiff workable alternatives, which were all rejected.  *See id.* When Plaintiff could not get what she wanted, she stopped working and went on full-time leave.  *See* Ex. 1, Pl.'s Dep. 216:8–217:22; Ex. 12, FMLA Communications, 10.

whether the employer has acted in good faith." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 38 (D.D.C. 2015) (internal quotation marks and citation omitted); *see also Clayborne v. Potter*, 448 F. Supp. 2d 185, 192–93 (D.D.C. 2006) (granting summary judgment when employer worked with a "committee" to find appropriate accommodation for employee over a twelve-month period).  The undisputed facts show that the District acted in good faith and did not unreasonably delay Plaintiff's accommodation.

DDS could not grant Plaintiff's requests to telework every day or on any day she felt it necessary.  Plaintiff's job required her to work in the field and to use an SSA database.  *See* Ex. 1, Pl.'s Dep. 40:13–20; Ex. 14, Resume; Ex. 3, Evan Dep. 102:3–22.  The SSA did not allow DDS employees to access the database remotely.  *See* Ex. 3, Evans Dep. 95:1–96:19. Nevertheless, after Plaintiff made her request, Evans contacted SSA, and requested permission for Plaintiff to telework.  *Id.* at 36:12–21, 96:22–97:18.  In response to Evans' request, SSA changed its policy that summer.  *See id.*

Once the SSA lifted this restriction, DDS worked with Plaintiff to find a reasonable accommodation.  DDS and Plaintiff's counsel communicated regarding how many days Plaintiff should be able to telework.  Shortly thereafter, DDS agreed to two days of telework per week. Ex. 4, Interactive Process Communications, 36.  Implementation of this accommodation was delayed by Plaintiff's demand for money to pay her attorney's fees.  *See id.* at 34–35, 42–49.

While these negotiations about fees were on going, Plaintiff asked if she could come back to work.  *Id.* at 43.  DDS responded that Plaintiff was always able to return to work, *id.* at 50, and informed Plaintiff that she would need to go through Federal and District suitability determinations before receiving a SSA-approved laptop, which would take a minimum of two weeks, *id.* at 50; Ex. 7, Laptop Communications 1–2; Ex. 3, Evans Dep. 105:14–106:3.  Once

she returned to work, she started teleworking immediately.  Ex. 9, First Day of Telework; Ex. 1, Pl.'s Dep. 360:10, 361:1–21.  Thus, before and after SSA's changed and finalized policy, DDS reasonably negotiated Plaintiff's accommodation.  Any delay in reaching an accommodation with Plaintiff stemmed from SSA security restrictions or Plaintiff's refusal to accept an offer for reasonable accommodation.  No reasonable jury could find otherwise.

## II.   PLAINTIFF'S CLAIM FOR GENDER DISCRIMINATION FAILS (COUNT II).

To prove gender discrimination under Title VII, a plaintiff must show: (1) she suffered an adverse employment action and (2) that adverse employment action was based on her sex. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  Plaintiff cannot prove that she suffered an adverse employment action or that DDS took that action because of her sex. Plaintiff's only allegation regarding sex discrimination hinges on her testimony that "it seemed like they did not like the fact that she was a female and requesting a laptop.  And beyond that, that's it."  *See* Ex. 1, Pl.'s Dep. 354:4–6.

First, not allowing Plaintiff to work at home or refusing to provide a laptop does not qualify as an adverse employment action.  "An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotations omitted).  Courts have regularly held that denial of telework does not qualify.  *See Beckham v. Nat'l R.R. Passenger Corp.*, 736 F. Supp. 2d 130, 149 (D.D.C. 2010) (holding that "deni[al of] the ability to work from home . . . is a minor annoyance, not an adverse action."); *Ng v. LaHood*, 952 F. Supp. 2d 85, 96 (D.D.C. 2013); *Hunter v. District of Columbia*, No. 09–01491, 2012 WL 7040239, at *4 (D.D.C. Sept. 12, 2012) ("The denial of Plaintiff's request to work at home as opposed to the

office cannot be characterized as an adverse employment action."); *Byrd v. Vilsack*, 931 F.Supp.2d 27, 41–42 (D.D.C.2013).  And Plaintiff eventually received the right to telework.  *See* Ex. 15, Telework Application and Agreement.  Accordingly, Plaintiff has no action for sex discrimination relating to this allegation.  *See Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 207 (D.D.C. 2017) (holding that the plaintiff did not suffer an adverse action when she eventually was granted telecommuting privileges even after a delay which forced her to take leave in the interim).

Even if Plaintiff could prove an adverse action, she cannot show causation.  Although she alleges DDS permitted two males, Evans and Confino to telework, Ex. 1, Pl.'s Dep. 119:15–20, this is incorrect.  *See* Ex. 3, Evans Dep.  78:2–14, 101:1–22.[12]  Without some evidence of causation, Plaintiff cannot prevail on a gender discrimination claim.

## III.   PLAINTIFF'S REQUEST FOR FMLA LEAVE WAS PROPERLY DENIED AND SHE DID NOT SUFFER ANY INJURY BECAUSE OF ANY ALLEGED DENIAL (COUNT V).

Plaintiff alleges that the District interfered with her ability to take FMLA leave when it "unlawfully denied Plaintiff's FMLA lave request."  Am. Compl. 12.  To prevail on an FMLA interference claim, Plaintiff must prove that "(1) she had a serious health condition; (2) her condition rendered her unable to perform the functions of her job; (3) she gave her employer reasonable notice of her need to take leave and the reasons for doing so; (4) the employer wrongfully denied the leave; and (5) plaintiff suffered a legal injury as a result of the denial." *Thomas v. District of Columbia*, 197 F. Supp. 3d 100, 107 (D.D.C. 2016); *see also* 29 U.S.C. § 2612 (a)(1)(D) (employee entitled to twelve workweeks of leave during any twelve-month

---

[12]     Although they had access to the DDD network (e-mail) through their mobile devices, neither had access to the SSA network—which is what Plaintiff needed to telework.

period); 29 C.F.R. § 825.112(a)(4) (defining eligibility).  Plaintiff cannot show that she was unable to perform the functions of her job because of her condition.

"An employee is unable to perform the functions of the position where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act (ADA) [and its regulations]."  29 C.F.R. § 825.123(a).  DDS asked Plaintiff to fill out an FMLA certification under 29 C.F.R. § 825.123(b) to determine whether she could perform the essential functions of her job.  Both Plaintiff and her health care provider indicated that she was able to do so.  Although, Plaintiff filled out the form.  Ex. 12, FMLA Communications at 2-3.  (physician checked "no" in response to: "Is the employee unable to perform any of his/her job functions due to the condition").   Based on this undisputed evidence, did not qualify for FMLA leave.

Second, even if DDS improperly denied Plaintiff's initial application for FMLA leave (and it did not), she has no claim for interference because she has no injury.[13]  FMLA guarantees job security and does not provide paid leave.  *See* 29 U.S.C. § 2601; 29 C.F.R. § 825.101.  DDS allowed Plaintiff to take leave without any negative repercussions.  She took as much leave as she wanted, and DDS never put her in AWOL status or demanded that she return to work.  The only consequence was that it was not called FMLA leave.

---

[13]     To the extent Plaintiff claims she was emotionally distressed by the interference, Am. Compl. 12, Plaintiff cannot recover for such a claim.  *See Lovely-Coley,* 255 F. Supp. 3d at 25 n.6 (finding that FMLA does not provide for emotional distress damages).

## IV.   PLAINTIFF CANNOT PROVE RETALIATION OR RETALIATORY HOSTILE WORK ENVIRONMENT (COUNTS III, IV, VI).

### A.   There is no evidence DDS took an adverse action against Plaintiff because of her protected activity (Count III).

Plaintiff has no evidence that DDS took an adverse action against her because of any alleged protected activity under the ADA, Rehabilitation Act, or Title VII.  To prove retaliation under the ADA, Rehabilitation Act, and Title VII, a plaintiff must establish a prima facie case that (1) she engaged in protected activity, (2) her employer took an adverse action against her, and (3) the employer took that adverse action because of her protected activity.  *See Smith v. District of Columbia,* 430 F.3d 450, 455 (D.C. Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and applying *McDonnel Douglas* framework to ADA retaliation claims); *Mogenhan v. Napolitano,* 613 F.3d 1162, 1165 (D.C. Cir. 2010) (applying *McDonnel Douglas* framework to Rehabilitation Act retaliation claims).  Plaintiff's claims fail on the second and third prongs.

An adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Mogenhan*, 613 F.3d at 1166 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Further, an adverse action must result in significant harm.  *Id.* (holding Title VII is not a "general civility code for the American workplace").  And under Title VII and the Rehabilitation Act, the plaintiff must show a materially adverse action.  *See Burlington*, 548 U.S. at 69 (Title VII); *Porfiri v. Eraso,* 121 F. Supp. 3d 188, 200 (D.D.C. 2015) (Rehabilitation Act).   As discussed below, the allegedly retaliatory actions against Plaintiff do not meet this requirement.

And Plaintiff has no evidence of causation. Temporal proximity can support an inference of causation but only where the two events are close in time and the specific facts support an

inference. *Hamilton v. Geithner,* 666 F.3d 1344, 1357 (D.C. Cir. 2012) (citations omitted);

*Cong. v. District of Columbia*, 277 F. Supp. 3d 82, 90 (D.D.C. 2017).   Although an exact amount

of time has not been established as too remote, three months is generally "approaching the outer

limit."   *See Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) (citing

*Hamilton*, 666 F.3d at 1357–58).

Plaintiff claims she engaged in protected activity because she requested a reasonable

accommodation on March 7 and filed a charge alleging disability and sex discrimination with the

EEOC on March 24.[14]   *See* Am. Compl. ¶¶ 81–83; Ex. 10, Charge of Discrimination.   For

purposes of this motion, the District does not dispute that Plaintiff engaged in these two actions

that constitute protected activity.   Plaintiff claims DDS retaliated against her by (1) reclassifying

her position, (2) issuing her a 3.48 out of 5 on her 2016-2016 performance evaluation, and (3)

intentionally delaying the issuance of her SSA laptop.   Am. Compl. ¶¶ 84–86.   There is no

evidence to support that any of DDS's actions are actionable for any of Plaintiff's retaliation

claims.

Reclassification of the Medical Liaison Officer Position

The reclassification is not an adverse action.   *See Burlington*, 548 U.S. at 67–68.   The

reclassification did not result in any financial harm to Plaintiff.   Ex. 1, Pl.'s Dep. 319:11–320:22,

321:1–14 (testifying that the reclassification wasn't "accurate. It wasn't fair. That's about it.").

Although DDS reclassified the position to Grade 11, Plaintiff would have received the same

---

[14]      Plaintiff seems to claim that her request for accommodation on July 14 was an action
DDS engaged in retaliation.   There is no evidence in the record to support a renewed request for
accommodation on July 14.   Plaintiff's counsel sent a letter on July 15 denying DDS's offer for
one day of telework every ten-day pay cycle.   *See* Ex. 4, Interactive Process Communications,
30-32.   Even so, the letter does little more than review Plaintiff's request for leave, and the
corresponding issues surrounding that request.   *See id.*

salary for two years.  *Id.*  Plaintiff resigned in September 2017, shortly after the birth of her child

and long before this future change in pay impacted her.  *Id.*  With no tangible effect on Plaintiff,

this reclassification cannot be considered an adverse action.

Even if Plaintiff claims she suffered some sort of injury or harm, there is no connection

between Plaintiff's alleged injury and DDS's action.  DDS started an audit of Plaintiff's position,

triggered through her own request, on April 13.  Ex. 1, Pl.'s Dep. 312:1–313:6.[15]  Barbara

Thompson performed the reclassification.  Ex. 13, Declaration of Barbara Thompson.  There is

no evidence Thompson knew of Plaintiff's protected activity.  *See McFarland v. George*

*Washington Univ.,* 935 A.2d 337, 357 (D.C. 2007) (plaintiff must prove that the actors

responsible for the adverse action had actual knowledge of the protected activity).  There is also

no temporal proximity between the date Plaintiff engaged in protected activity (March 7 and 24)

and the date of the reclassification (October 3).  Proximity of seven months (at best) between the

protected activity and alleged adverse action is not enough to support a causal link inference.

*See Greer*, 113 F. Supp. 3d at 311 (three months is often the threshold).  Plaintiff provides no

other evidence of causation.[16]

<u>Lower Average Rating on 2015-2016 Performance Evaluation</u>

---

[15] This also shows that DDS had a legitimate non-retaliatory reason for the reclassification.

[16]    Plaintiff claims she heard Evans and Bonsack joke about the genuineness of Plaintiff's accommodation request.  *See* Am. Compl. ¶ 34.  Even if this event took place, this single, isolated incident, which Plaintiff perceived to be a joke, has no nexus to Plaintiff's claims. *See Simms v. U.S. Gov't Printing Office*, 87 F. Supp. 2d 7, 9 n.2 (D.D.C. 2009) (finding "stray remarks" like a "joking gesture" and single derogatory comment insufficient to support claim of discrimination when remarks were unrelated to employment decision); *Prater v. FedEx Corporate Servs.*, No. 07-22, 2009 U.S. Dist. LEXIS 51146, at *22-34 (D.D.C. June 18, 2009) (finding no inference of discrimination where no nexus existed between a "remark made in a joking manner" and several general comments about African Americans and the plaintiff's termination); *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 666 (D.D.C. 1997) ("Stray workplace remarks, without a clearly demonstrated nexus to the adverse employment action at issue, are not alone sufficient to withstand a motion for summary judgment.").

Plaintiff also claims DDS retaliated against her by issuing her a 3.48 out of 5 on her 2015–2016 performance evaluation.  Am. Compl. ¶ 63.  Without evidence of financial harm, this slightly lower performance review cannot constitute an adverse action.  Ex. 1, Pl.'s Dep. 356:21–22, 357:1–22, 358:1–7.  Lower performance reviews, on their own, cannot establish an adverse action unless the lower score led to a more tangible form of an adverse action.  *Baloch*, 550 F.3d at 1199 ("performance reviews typically constitute adverse actions only when attached to financial harms.").  Again, Plaintiff has no direct evidence that this review financially harmed her.  Thus, Plaintiff's 2015–2016 performance evaluation cannot be considered an adverse action.

For similar reasons stated above, there is no connection because any alleged harm and DDS's actions.  DDS issued this evaluation to Plaintiff on or around September 15, 2016—about six months after Plaintiff's protected activity.  *See* Ex. 1, Pl.'s Dep. 338:16–339:22.   A six-month gap cannot prove temporal proximity.  *See Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d at 311 (three months is the threshold).  Thus, this performance evaluation cannot support an ADA, Rehabilitation Act, or Title VII claim of retaliation.

Delayed Issuance of SSA Laptop

Plaintiff claims that DDS retaliated against her by intentionally delaying the issuance of her SSA laptop.  Am. Compl. ¶ 64.  There is no evidence this delay tangibly affected her employment.  Once Plaintiff returned to work, she immediately started teleworking that week.  *See* Ex. 9, First Day of Telework.  Without evidence of tangible harm, this cannot constitute an adverse action.  *See Baloch*, 550 F.3d at 1199.

As discussed above, there is no connection between Plaintiff's protected activity and any alleged delay.  Plaintiff was on FMLA leave when her attorney requested if she could return to

work on September 26.  Ex. 4, Interactive Process Communications, 43.  DDS responded on

September 30 that she has always been able to return to work and she could start immediately.

*Id.* at 50.  That same day, DDS requested Plaintiff's counsel to contact Evans as soon as possible

to start the suitability determinations for the SSA laptop.  *Id.*  Plaintiff contacted Evans the next

day, who asks Plaintiff to come in the next day to start the photo, fingerprinting, and

documentation process.  Ex. 7, Laptop Communications, 1–2.  Even if the mandatory federal and

state checks could be categorized as a delay, this occurred about five months after her alleged

protected activity.  A five-month gap cannot prove temporal proximity.  *See Greer v. Bd. of Trs.*

*of Univ. of D.C.*, 113 F. Supp. 3d at 311 (three months is the threshold).

### B.  Plaintiff's claim for retaliatory hostile work environment fails (Count IV).

Plaintiff claims that she is entitled to relief for hostile work environment retaliation in

violation of the Rehabilitation Act because DDS retaliated against her after she requested a

reasonable accommodation on March 7 and filed a charge of discrimination with the EEOC on

March 24. [17]   *See* Am. Compl. ¶¶ 92–94; Ex. 10, Charge of Discrimination. [18]  To show a

---

[17]     Although newly recognized in the Title VII context, *Nat'l R.R. Passenger Corp.*, 536 U.S. 101, *Román v. Castro*, 149 F. Supp. 3d 157, 166 (D.D.C. 2016) (citations omitted), this circuit has not yet recognized a retaliatory hostile work environment claim under the Rehabilitation act. *See Bryant v. Brownlee,* 265 F. Supp. 2d 52, 66-67 (D.D.C. 2003); *Douglas v. District of Columbia Housing Authority,* 306 F.R.D. 1, 5 (D.D.C. 2014) (recognizing a potential retaliatory hostile work environment claim but declining to apply it for other reasons).  Because the Supreme Court has found the Title VII framework to apply to the Rehabilitation Act retaliation claims, it is possible this Circuit will recognize this claim.  *See Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49–50 & n.8 (D.D.C. 2003) (citing *Tex. Dep't of Cmty. Affairs v. Burdin*e, 450 U.S. 248, 252–53 (1981)).  Consequently, the District addresses it here.

[18]     Plaintiff seems to claim that her request for accommodation on July 14 was a protected action DDS retaliated against.  There is no evidence in the record to support a renewed request for accommodation on July 14.  Plaintiff's counsel sent a letter on July 15 denying DDS's offer for one day of telework every ten-day pay cycle.  *See* Ex. 4, Interactive Process Communications, 30-32.  Even so, the letter does little more than review Plaintiff's request for leave, and the corresponding issues surrounding that request.  *See id.*

hostile work environment must Plaintiff prove that "h[er] employer subjected h[er] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201 (inner quotation marks and citations omitted); *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (stating that the defendant's "conduct must be extreme to amount to a change in the terms and conditions of employment."). Importantly, a plaintiff must prove that the retaliation was "based on the employee's participation in protected activity," *see Román,* 149 F. Supp. 3d at 166 (D.D.C. 2016), and that the acts giving rise to her claim are "adequately connected to [any protected activity…as] part of the same unlawful employment practice... as opposed to being an array of unrelated…retaliatory acts." *Id.* (citing *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011) (quotations marks omitted). Finally, a plaintiff engaging in protected activity under the Rehabilitation Act must be the but-for cause of the hostile work environment. *See Savage v. Azar*, 301 F. Supp. 3d 114, 129 (D.D.C. 2018) (citing *Univ. of Texas Sw. Med. Ctr.*, 570 U.S. at 362) (holding retaliatory Rehabilitation Act claim applies like Title VII claims' but-for standard)).. *Id.*

To determine whether allegations meet the high standard for a hostile work environment, courts look at "all the circumstances" such as the "frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Sims v. District of Columbia*, 33 F. Supp. 3d 1, 14 (D.D.C. 2014) (quoting *Nat'l R.R. Passenger Corp.,* 536 U.S. at 116 (inner quotation marks and citations omitted)) (holding that there is a genuine question for the jury whether assigning plaintiff to undesirable shifts, refusing her transfer request, not informing her of training opportunities, and refusing to provide this information, and other

incidents constituted a retaliatory hostile work environment).  The defendant's "conduct must be extreme to amount to a change in the terms and conditions of employment."  *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998).

Plaintiff claims DDS subjected her to a hostile by decreasing her job duties and responsibilities.  Am. Compl. ¶ 96.  She claims this occurred when she returned to work in October 2016.  *See* Ex. 1, Pl.'s Dep. 217:18–22, 363:16–20.  Plaintiff testified that she was being "left off e-mails, [she] was not being involved in tasks [she] was normally involved in and should have been involved in."  *Id.* at 364:1–6.  Plaintiff claims that she should have been involved with dealing with DDS's consultative examination provider, but he would schedule calls and meetings and not involve her.  She cannot identify any other tasks of which she was left off.  *Id.* at 364:1–6.  Plaintiff also testified that she was "physically isolated" and Evans did not speak to her.  *Id.* at 175:7–21, 271:18–22.  Plaintiff does not explain how she DDS physically isolated her.

Plaintiff's retaliatory hostile work environment claim should be dismissed because no reasonable jury could find that DDS subjected Plaintiff to a severe and pervasive harassment.  Plaintiff has not established as a factual matter that she suffered harassment so severe that it altered the conditions of her employment.  Being left off of e-mails or calls does not rise to the level of severe and pervasive.  *See Sims,* 33 F. Supp. 3d at 14.  And she has no evidence other than her own self-serving testimony that these things occurred.  *See Bryant v. Brownlee,* 265 F. Supp. 2d 52, 68 (D.D.C. 2003) (citing *Harding v. Gray,* 9 F.3d 150, 154 (D.C. Cir. 1993) ("[M]ere unsubstantiated allegation…creates no 'genuine issue of fact' and will not withstand summary judgment.")).  The record shows that she communicated with Evans and other Agency

officials many times after March 7 and 24.  *See* Ex. 12, FMLA Communications; Ex. 4,

Interactive Process Communications; Ex. 8, Return to Work.

Plaintiff also has no direct evidence that DDS would not have subjected her to an alleged

hostile work environment but for her protected activity.  In fact, the alleged hostile work

environment happened six to seven months after her protected activities.  This time period is not

enough to support temporal proximity.  *See Greer*, 113 F. Supp. 3d at 311 (three months is often

the threshold).  Without more, no reasonable jury could find but-for causation.

Thus, Plaintiff because Plaintiff has no evidence that DDS subjected her to a severe

hostile work environment in retaliation for her reasonable accommodation request and EEOC

charge, the Court should find for the District on Count IV.

### C.  Plaintiff's FMLA retaliation claim fails (Count VI).

Plaintiff claims DDS retaliated against her by reclassifying her position from Grade 12 to

Grade 11.  Am. Compl. 13.  She also claims DDS retaliated against her by rating her 3.48 on her

2015-2016 annual performance evaluation while considering her FMLA absences.  *Id.*  To prove

FMLA retaliation, a plaintiff must establish: (1) she "engaged in a protected activity under [the

FMLA] statute"; (2) she "was adversely affected by an employment decision"; and (3) "the

protected activity and the adverse employment action were causally connected."  *Gleklen v.

Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000).  Following the

Supreme Court's decision in *Univ. of Texas Sw. Med. Ctr. v. Nassar* holding that Title VII

retaliation claims require but-for causation, courts in this circuit have not determined whether the

Court's decision in the Title VII contexts extends to FMLA retaliation claims.  *Long v.

Endocrine Soc'y,* 263 F. Supp. 3d 275, 282 (D.D.C. 2017) (citing 570 U.S. at 338).  Moreover,

Plaintiff must prove she was subject to a tangible employment decision by which she lost

compensation.  *See Roseboro v. Billington,* 606 F. Supp. 2d 104, 108 (D.D.C. 20009) (citations omitted) (because the statutory cause of action provides only compensatory damages, FMLA only allows recovery for actual damages); *Thomas v. District of Columbia*, 227 F. Supp. 3d 88, 99 (D.D.C. 2016).

To show an adverse employment action under an FMLA retaliation claim, Plaintiff must prove she was subject to a tangible employment decision by which she lost compensation.  *See Roseboro v. Billington,* 606 F. Supp. 2d 104, 108 (D.D.C. 20009) (citations omitted) (because the statutory cause of action provides only compensatory damages, FMLA only allows recovery for actual damages); *Thomas v. District of Columbia*, 227 F. Supp. 3d 88, 99 (D.D.C. 2016).  As discussed above [cite the section] neither changing Plaintiff's position or the score on her performance evaluation qualifies as an adverse personnel action.

Further, Plaintiff suffered no loss of compensation or tangible loss.  Ex. 1, Pl.'s Dep. 356:21–358:7.  As discussed above, her performance evaluations did not tangibly impact her employment or promotion opportunities, *see id.,* and they cannot constitute an adverse action. *See Baloch*, 550 F.3d at 1199 ("performance reviews typically constitute adverse actions only when attached to financial harms.").  Plaintiff quit before the reclassification could impact her pay. Ex. 1, Pl.'s Dep. 319:11–321:14.  Accordingly, the Court should grant judgment in the District's favor on Count VI.

## CONCLUSION

For these reasons, the Court should grant the District's motion and award judgment in its favor on all of Plaintiff's claims.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLE SPECTOR, | |
| *Plaintiff,* | |
| v. | Case No. 1:17-cv-001884 (EGS) |
| THE DISTRICT OF COLUMBIA, | |
| *Defendant.* | |

## ORDER

Upon consideration of Defendant District of Columbia's Motion for Summary Judgment,

the memorandum submitted in support, any opposition and reply thereto, the attached exhibits,

and the entire record herein, for the reasons stated in the defendant's motion, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED.**

Date: _____

_____
EMMETT G. SULLIVAN
United States District Judge

Denise Clark
Clark Law Group, PLLC
1100 Connecticut Ave, NW
Suite 920
Washington, D.C. 20036
*Counsel for Plaintiff*

Taylor Morosco
Assistant Attorney General
441 Fourth Street, NW
Suite 600S
Washington, D.C. 20001
*Counsel for Defendant*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NICOLE SPECTOR, | |
| *Plaintiff,* | |
| v. | Case No. 1:17-cv-001884 (EGS) |
| THE DISTRICT OF COLUMBIA, | |
| *Defendant.* | |

## TABLE OF CONTENTS

FACTUAL BACKGROUND ............................................................................................... 3

PROCEDURAL HISTORY ............................................................................................... 12

LEGAL STANDARD ....................................................................................................... 13

ARGUMENT ................................................................................................................... 14

I.     PLAINTIFF CANNOT PROVE DISABILITY DISCRIMINATION UNDER THE ADA OR REHABILITATION ACT (COUNT I). ...................................................... 14

II.    PLAINTIFF'S CLAIM FOR SEX DISCRIMINATION FAILS (COUNT II). .......... 17

III.   PLAINTIFF'S REQUEST FOR FMLA LEAVE WAS PROPERLY DENIED AND, REGARDLESS, SHE DID NOT SUFFER ANY INJURY BECAUSE OF ANY ALLEGED DENIAL (COUNT V). ............................................................................. 18

IV.   PLAINTIFF CANNOT PROVE RETALIATION OR RETALIATORY HOSTILE WORK ENVIRONMENT (COUNTS III, IV, VI). ................................................... 20

    A.   There is no evidence DDS took an adverse action against Plaintiff because of her protected activity (Count III). ........................................................................... 20

    B.   Plaintiff's claim for retaliatory hostile work environment fails (Count IV). ........ 24

C.   Plaintiff's FMLA retaliation claim fails (Count VI)............................................. 27

CONCLUSION ....................................................................................................................... 20

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NICOLE SPECTOR, | |
| *Plaintiff,* | |
| v. | Case No. 1:17-cv-001884 (EGS) |
| THE DISTRICT OF COLUMBIA, | |
| *Defendant.* | |

## __TABLE OF AUTHORITIES__

### __Cases__

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 13

*Baird v. Gotbaum*, 662 F.3d 1246 (D.C. Cir. 2011) ..................................................................... 25

*Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008) ........................................................ 17, 23

*Beckham v. Nat'l R.R. Passenger Corp.*, 736 F. Supp. 2d 130 (D.D.C. 2010) ............................ 17

*Bryant v. Brownlee,* 265 F. Supp. 2d 52 (D.D.C. 2003) ............................................................... 26

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ................................................. 20

*Byrd v. Vilsack*, 931 F.Supp.2d 27 (D.D.C.2013) ......................................................................... 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................... 13, 14

*Clayborne v. Potter*, 448 F. Supp. 2d 185 (D.D.C. 2006) ........................................................... 16

*Cong. v. District of Columbia*, 277 F. Supp. 3d 82 (D.D.C. 2017) ............................................. 21

*Doak v. Johnson*, 19 F. Supp. 3d 259 (D.D.C. 2014) .................................................................. 15

*Douglas v. Donovan*, 559 F.3d 549 (D.C. Cir. 2009) .................................................................. 17

*Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18 (D.D.C. 2015) ....................................... 16

*Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) ........................................................... 25, 26

*Floyd v. Lee*, 968 F. Supp. 2d 308 (D.D.C. 2013) ...................................................................... 14

*Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365 (D.C. Cir. 2000) ............. 27

*Graffius v. Shinseki*, 672 F. Supp. 2d 119 (D.D.C. 2009) ........................................................... 14

*Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297 (D.D.C. 2015) ..................... 21, 23, 24

*Hamilton v. Geithner,* 666 F.3d 1344 (D.C. Cir. 2012) .................................................... 21

*Harding v. Gray*, 9 F.3d 150 (D.C. Cir. 1993) ............................................................... 26

*Hunter v. District of Columbia*, No. 09–01491, 2012 WL 7040239 (D.D.C. Sept. 12, 2012) ..... 17

*Leiterman*, 60 F. Supp. 3d 166 (D.D.C. 2014) ............................................................... 15

*Long v. Endocrine Soc'y,* 263 F. Supp. 3d 275 (D.D.C. 2017) ..................................... 27

*Matos v. DeVos*, 317 F. Supp. 3d 489 (D.D.C. 2018) ................................................... 15

*Mayers v. Laborers' Health & Safety Fund of North Am.*, 478 F.3d 364 (D.C. Cir. 2007).......... 15

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ............................................ 20

*McFarland v. George Washington Univ.,* 935 A.2d 337 (D.C. 2007)........................................ 22

*Mogenhan v. Napolitano*, 613 F.3d 1162 (D.C. Cir. 2010) ..................................... 15, 20

*Musgrove v. District of Columbia*, 775 F. Supp. 2d 158 (D.D.C. 2011) ....................... 14

*Ng v. LaHood*, 952 F. Supp. 2d 85 (D.D.C. 2013) ......................................................... 17

*Pauling v. District of Columbia*, 286 F. Supp. 3d 179 (D.D.C. 2017) ........................... 18

*Roseboro v. Billington,* 606 F. Supp. 2d 104 (D.D.C. 20009) ..................................... 28

*Savage v. Azar*, 301 F. Supp. 3d 114 (D.D.C. 2018) .................................................. 25

*Scott v. Harris*, 550 U.S. 380 (2007) ........................................................................ 13

*Sims v. District of Columbia*, 33 F. Supp. 3d 1 (D.D.C. 2014)..................................... 25

*Smith v. District of Columbia,* 430 F.3d 450 (D.C. Cir. 2005)...................................... 20

*Thomas v. District of Columbia*, 197 F. Supp. 3d 100 (D.D.C. 2016) ......................... 18

*Thomas v. District of Columbia*, 227 F. Supp. 3d 88 (D.D.C. 2016) ........................... 28

*Ward v. McDonald*, 762 F.3d 24 (D.C. Cir. 2014) ....................................................... 15

*Waterhouse v. District of Columbia*, 298 F.3d 989 (D.C. Cir. 2002) ........................... 13

## Other Authorities

*Disability Determination Process*, Social Security Administration,

   https://www.ssa.gov/disability/determination.htm (last visited Oct. 12, 2018) ......................... 3

*Short-Term Disability Insurance Program,* Department on Disability Services,

   https://dds.dc.gov/page/short-term-disability-insurance-program (last visited Oct. 16, 2018). 11

## Rules

Fed. R. Civ. P. 56................................................................................................... 13

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NICOLE SPECTOR,

    *Plaintiff,*

 v.           Case No. 1:17-cv-001884 (EGS)

THE DISTRICT OF COLUMBIA,

    *Defendant.*

## <u>INDEX OF EXHIBITS</u>

Exhibit 1, Pl.'s Dep.

105:14–22 ............................................................................................................... 4

119:15–20 ............................................................................................................ 9, 18

175:7–21 ............................................................................................................... 26

199:11–15 ............................................................................................................... 6

199:16–18 ............................................................................................................... 6

201:1–10 ............................................................................................................... 7

203:10–22 ........................................................................................................... 6, 7

213:2–17 ............................................................................................................... 7

213:2–215:22 ......................................................................................................... 7

216:1–7 ................................................................................................................. 7

216:8–217:22 ......................................................................................................... 15

217:18–22 ............................................................................................................. 26

25:7–8 ................................................................................................................... 4

25:8–22 ................................................................................................................. 4

26:1–22 ................................................................................................................. 4

27:1–22 ................................................................................................................. 4

271:18–22 ............................................................................................................. 26

277:14–278:6 ......................................................................................................... 12

28:13–17 ............................................................................................................ 12

28:9–12 ............................................................................................................... 4

291:17–20 .......................................................................................................... 12

312:1–313:6 ....................................................................................................... 22

312:9–313:6 ....................................................................................................... 10

316:16–21 ..................................................................................................... 11, 12

319:11–22 .......................................................................................................... 12

319:11–320:22 ................................................................................................... 21

319:11–321:14 ................................................................................................... 28

321:1–14 ............................................................................................................ 21

338:16–339:22 ................................................................................................... 23

354: 4–6 ............................................................................................................. 17

356:21–22 .......................................................................................................... 23

356:21–358:7 ..................................................................................................... 28

357:1–22 ............................................................................................................ 23

358:1–7 .............................................................................................................. 23

360:10 ................................................................................................................ 17

360:10–12 ......................................................................................................... 5, 9

360:10–361:7 ...................................................................................................... 9

361:1–21 ............................................................................................................ 17

363:16–20 .......................................................................................................... 26

364:1–6 .............................................................................................................. 26

40:13–20 ............................................................................................................ 16

46:4–49:21 .......................................................................................................... 5

57:1–12 ............................................................................................................... 4

75:3–78:2 ........................................................................................................... 11

86:10–87:6 ......................................................................................................... 12

Exhibit 2, Grade 12 Position Description .............................................................. 4

Exhibit 3, Evans Dep.

100:5–22 .............................................................................................................. 6

101:1–102:22 ....................................................................................................... 4

101:1–22 .......................................................................................................... 10, 18

101:8–22 .................................................................................................................. 9

102:3–22 ............................................................................................................. 4, 16

105:14–106:3 ........................................................................................................ 16

106:12–107:14 ....................................................................................................... 11

13:12–13 ............................................................................................................... 10

32:4–22 ................................................................................................................... 4

36:12–21 ............................................................................................................ 5, 16

36:19–38:12 ............................................................................................................ 5

40:5–41:22 .............................................................................................................. 9

78:2–14 .............................................................................................................. 9, 18

9:15–22 ................................................................................................................. 10

95:1–96:19 ......................................................................................................... 4, 16

96:22–97:1 .............................................................................................................. 5

96:22–97:18 .......................................................................................................... 16

98:1–100:4 .............................................................................................................. 9

Exhibit 4, Interactive Process Communications ...................... 5, 6, 7, 8, 9, 12, 15, 16, 21, 24, 27

Exhibit 5, Reasonable Accommodation Request ..................................................... 5

Exhibit 6, Hernandez Dep.

127:1–128:16 .......................................................................................................... 6

Exhibit 7, Laptop Communications ............................................................. 9, 16, 24

Exhibit 8, Return to Work ......................................................................... 9, 10, 12, 27

Exhibit 9, First Day of Telework .............................................................. 9, 17, 23

Exhibit 10, Charge of Discrimination ......................................... 10, 12, 21, 24

Exhibit 11, Declaration of Gria Hernandez ........................................... 10

Exhibit 12, FMLA Communications ..................................... 10, 11, 15, 27

Exhibit 12, FMLA Communications at 2-3 ........................................... 19

Exhibit 13, Declaration of Barbara Thompson ........................... 10, 11, 22

Exhibit 14, Resume ................................................................................. 16

Exhibit 15, Telework Application and Agreement ........................... 18

Exhibit 18, Pl.'s Resp. to Interrogatories ........................................... 11