# Exhibit 5



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C. 20507
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Washington Status Line: (866) 408-8075
Washington Direct Dial: (202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0740
Website: www.eeoc.gov

Charge Number 570-2016-01054

| | |
|---|---|
| Nicole Appleman (Spector)<br>4835 Cordell Ave, Apt 819<br>Bethesda, MD 20814 | Charging Party |
| D.C. Department of Disability Services<br>1227 25th Street, N.W.<br>Washington, DC 20037 | Respondent |

## DETERMINATION

On behalf of the Commission, I issue the following determination on the merits of the subject charge filed under the Americans with Disabilities Act, as amended ("ADA"). Timeliness, deferral, and all other requirements for coverage have been met.

Charging Party, an individual with a disability, was employed by Respondent as a Medical Liaison Officer for Respondent's Social Security Disability Determination Division (DDD). She alleges that on or around March 7, 2016, she requested partial telework to accommodate her disability and that on or about March 9, 2016, Respondent violated the ADA by denying this request. Further, Charging Party alleges that Respondent discriminated against her based on her disability and retaliated against her for engaging in protected activity by lowering the classification of her position from CS-12 to CS-11, giving her a lower performance evaluation than she had received in prior years, and failing to promptly provide her with a secure laptop once telework was ultimately approved and she returned to work effective October 17, 2016.

Respondent defends that it initially denied Charging Party's request for telework because of insufficient documentation to prove that Charging Party's health condition deemed her unable to work. Respondent states that thereafter renewed its denial because, according to Charging Party's job description, she was required to work daily in the field and because security issues prevented Charging Party from being able to access information she needed to perform her job from a remote location. Respondent states that in or around August 2016, it informed Charging Party that she could telework twice a week, pursuant to changes in its telework policy, and confirmed that she would be able to remotely access the secure information she needed. Charging Party returned to work on October 17, 2016.

With regard to the reclassification of Charging Party's job from a CS-12 to a CS-11, Respondent defends that the reclassification was based on Charging Party's continuous assertion, in support of her request to telework as a reasonable accommodation, that her position description was inaccurate and therefore not an appropriate measure of her essential job functions. Respondent offered to maintain Charging Party's CS-12 salary for a 24-month period. With regard to Charging Party's performance evaluation, Respondent argues that the difference between her 2015-2016 rating and her 2014-2015 rating was only .02 points (3.50 v. 3.48) and that Charging Party remained a "valued performer."

The evidence indicates that Respondent could have accommodated Charging Party by allowing her to telework twice a week, without posing an undue hardship. Respondent relied exclusively on an outdated position description to conclude that Charging Party's job required daily work in the field; even after being notified that field work was only required several times annually, Respondent did not grant Charging Party's accommodation for another seven months. In addition, Respondent admitted that two individuals, Charging Party's supervisor, Darryl Evans, and Robert Cofino, IT Analyst, both had been issued laptops which allowed them to access social security administration data remotely. As a result of Respondent's failure to accommodate Charging Party, she remained out of work from May 13, 2016 through October 17, 2016. By the time Charging Party returned to work, her position had been downgraded from a CS-12 to a CS-11, as a result of changes made to her position description to remove the field work duties she had notified Respondent she was not performing, and, in fact, had never performed. Charging Party's direct supervisor had been aware for some time that Charging Party's job did not require field work. When Charging Party brought this to the attention of Human Resources pursuant to her accommodation request, Respondent revised her job description by removing the field work duties but did not account for her higher level duties.

With respect to Charging Party's performance evaluations, the evidence demonstrates that Charging Party had received a score of 3.5 in the two years prior to the year she requested a reasonable accommodation, placing her in the category of "Highly Effective." In contrast, Charging Party received a score of 3.48 in 2015-2016, placing her in the lower category of "Valued Performer." In several places in the evaluation, Respondent references the effect of her absences from work on her job performance, absences which would not have occurred but for Respondent's failure to accommodate her.

Based on the foregoing, I find that there is reasonable cause to believe that Respondent failed to accommodate Charging Party for a period of approximately seven months, and thereafter retaliated against her for requesting an accommodation and/or filing the instant charge, in violation of the ADA. With respect to Charging Party's remaining allegations, there is insufficient evidence to establish reasonable cause to determine whether discrimination occurred. Upon finding that a violation has occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of the matter. The confidentiality provisions of sections 706 and 709 of Title VII, incorporated by reference in Section 107 of the ADA, and Commission Regulations apply to information obtained during conciliation discussions.

If Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation discussion.

Respondent is reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in the Commission's investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

_____3/10/17_____
Date

Mindy E. Weinstein
Acting Director